Circuit Court, District of Columbia. Dec. Term, 1828.

REAL PROPERTY—EQUITABLE ESTATE—GROUND RENT.

1. W. B., a lessee for ninety-nine years, renewable forever, at a certain rent, of a house and lot in Georgetown, D. C., sold to G. M., by deed of bargain and sale, the demised premises, together with other lots and lands, in which he had a fee-simple estate, "to have and to hold the aforesaid lots or parcels of land, to the said G. M., his heirs, executors, administrators, or assigns, forever," with general warranty of "the said lots or parcels of land;" held, that G. M. acquired the legal estate in the term for years only, although the said W. B. had then an equitable title to the reversion; and that nothing passed by the marshal's sale under a fi. fa. against G. M. but the term for years; and that the subsequent sale of the reversion by W. B. to P. B. K., and a conveyance to him

from the original lessor, were valid, and transferred the reversion to P. B. K.

2. A legal term for years does not merge in an equitable title to the reversion.

Bill of interpleader, by John Litle against John Ott's heirs and the heirs of P. B. Key, both of whom claimed the ground-rent from the plaintiff, who was the tenant in possession, under a lease from the administratrix of John Ott. John Ott's title was under the marshal's sale in June, 1804, upon a fi. fa. against George Magruder, whose title was by a deed of bargain and sale to him from William Bailey, on the 1st of June, 1798, purporting, in consideration of £3,000, to convey "one house and lot in Georgetown, at the corner of High and Falls street, the half square opposite to where Colonel William Deakins formerly lived in the aforesaid town; also a tract of land on the west side of the eastern branch, &c., containing 206 acres, more or less; to have and to hold the aforesaid lots or parcels of land unto the said George Magruder, his heirs, executors, administrators, or assigns, forever;" with general warranty to the said G. M., his heirs and assigns, forever. When W. Bailey made this deed, the only legal estate which he had was the leasehold estate for ninety-nine years, subject to a ground rent, upon a lease to him made by John and Lucy Addison, December 9, 1783; but he had purchased the reversion of Charles Lowndes, who had purchased it of Anthony Addison, who had purchased it of John and Lucy Addison, in whom the legal estate still remained. After the deed from W. Bailey to George Magruder, to wit, on the 24th of October, 1798, he, W. Bailey, sold the reversion to P. B. Key, to whom it was legally transferred by Anthony Addison on the 23d of January, 1800, to whom it had been legally conveyed by John and Lucy Addison, the original lessors, upon the 6th of September, 1799; so that Mr. Key obtained the legal estate in the reversion, without its passing through W. Bailey, and without notice, as it was alleged, of any claim by George Magruder to the reversion, or any part of it. The principal question in the case was, whether John Ott died seized of an estate in fee, or only possessed a leasehold estate in a house and lot at the southwest corner of Water and Falls streets in Georgetown, being part of the original lot No. 47, in that town.

Mr. Marbury and Mr. Key, for Mr. Key's heirs, contended that nothing passed to George Magruder by the deed of W. Bailey, but the legal estate which Bailey then had, which was only a leasehold estate; that the term did not merge in the equitable title to the reversion; and that Mr. Bailey did not intend to sell the reversion of the house and lot; for although the habendum is to G. M. and his heirs, yet it is also to his executors and administrators, which are wholly inapplicable to an estate in fee, and the word

"heirs," is satisfied by application to the other property, conveyed in the same deed, and in which Mr. Bailey had the fee-simple estate. It would have been a fraud in him to sell the reversion to Mr. Key after having sold it to G. M. That Mr. Key had obtained the legal title to the reversion without its passing through Mr. Bailey, and without notice of any claim to it by G. M., they cited 3 Prest. Conv. 7, 25, 28, 566, 569; 1 Cruise, Dig. 509, 515; and Willoughby v. Willoughby, 1 Term R. 770.

R. S. Coxe, for Ott's heirs. Mr. Bailey had the equitable reversion in fee; and although the term did not legally merge in the equitable title to the reversion, yet the term is attendant upon the inheritance to protect the equitable reversion from intermediate incumbrances. The deed of Bailey to G. M. was an assignment of Bailey's equitable as well as legal estate. Mr. Coxe cited Sugd. Vend. 131; Philips v. Clarkson, 3 Yeates, 124; and Phillips v. Bonsall, 2 Bin. 138.

CRANCH, Chief Judge, after stating fully the facts of the case, and the argument to show that the ground-rents sold by Mr. Bailey to Mr. Key included the ground rent of the lot sold to George Magruder, delivered the opinion of the court. Mr. Bailey's deed to George Magruder passed only the legal estate in the term for years which Mr. Bailey possessed. It could not, contrary to his will, transfer any equitable right which he possessed; so that Mr. Magruder, in consequence of that deed acquired no right to call upon Mr. Key to convey to him the reversion in fee, even if he had received notice of that deed, of which there is no evidence; so that he stood in the predicament of a purchaser of a legal estate without notice of an equitable incumbrance, if any existed. It is true that the words of the deed are sufficient to carry the fee if Mr. Bailey had been competent to convey a fee; but as he was not, they can only be used as evidence of his intention to convey a fee. But he used also other words which are not usual nor necessary in conveying a fee; and which are appropriate to the conveyance of a chattel interest only; namely, "executors and administrators." The expressions are: "To have and to hold the said lots or parcels of land, unto the said George Magruder, his heirs, executors, administrators, or assigns, forever." The property conveyed by that deed consisted not only of the lot in question, but of "the half square opposite to where Col. William Deakins formerly lived." "and a tract of land on the west side of the eastern branch," &c., containing 206 acres: so that the word "heirs," was necessary to the conveyance of the whole estate in part of the property, and may have been intended to be confined to that part of the property to the

conveyance of which it was necessary, and the words, "executors and administrators," may be considered as appropriated to the chattel interest. The use of the word "heirs," therefore, is not conclusive evidence of the intention, nor is there any other evidence that it was the belief or understanding of Mr. Magruder at the time of the contract, that he was purchasing the fee-simple; and we have seen clearly, from the contract and conduct of Mr. Bailey, that such was not his intention or understanding. We think, therefore, that Mr. Magruder had no equity which he could set up against Mr. Key's legal estate in the ground-rents. It is certain that the reversion in fee did not pass to Mr. Magruder, and Dr. Ott could not, at the marshal's sale under a fieri facias against Mr. Magruder, acquire any thing more than Mr. Magruder's legal title, such as it was. He could acquire only the legal estate in the term for years.

It was contended in argument, that when the tenant for years obtained an equitable title to the reversion in fee, the term merged in the equitable reversion. But merger is the legal effect of the coincidence of legal rights only. There is no instance of the merger of a legal title in an equitable, so as to extinguish the legal title. The cases cited by Preston, in his treatise upon the doctrine of Merger, in pages 7, 25, 28, 566, 569, are decisive upon this point. The dicta cited from Philips v. Clarkson, 3 Yeates, 124, and 2 Bin. 138, are loose, and rather inaccurate admissions by the court; and it is evident that the court was not contemplating the distinction between the coincidence of a legal with a superior legal estate, and that of a legal with an equitable estate. The reference which the judge makes is evidently to the common legal doctrine of merger. Mr. Key and his heirs seem to have been in the uninterrupted seizin of the reversion and the ground-rent, from January, 1800, to the year 1825, when this dispute originated; so that they are protected by limitation of time as well as by an actual legal title. We are therefore of opinion, that the title of the late John Ott, the ancestor of the defendants, Mary C. Beatty and John W. Ott, was a chattel interest,—a term for years, and not a fee-simple,—and that the reversion in fee is in the defendants, the heirs of the late P. B. Key, and that the right to the term of years is in the administrator de bonis non of the said John Ott. Decree accordingly.

LITLE (UNITED STATES v.). See Case No. 15,608.

LITTELL (BEARDSLEY v.). See Case No. 1,185.

LITTELL (KEROSENE LAMP CO. v.). See Case No. 7,723.

LITTELL (KEROSENE LAMP HEATER Co. v.). See Case No. 7,724.